UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
VIJAYAKUMAR MOSES,                      )
                                        )
            Plaintiff,                  )        Civil Action No. 01-2528 (PLF)
                                        )
      v.                                )
                                        )
HOWARD UNIVERSITY HOSPITAL,             )
                                        )
            Defendant.                  )
_____)


OPINION

This matter is before the Court on defendant Howard University Hospital's

motion for summary judgment.[1]  Plaintiff brings suit alleging retaliation in violation of Title VII

of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and the

District of Columbia Human Rights Act ("DCHRA") D.C. Code § 2-1401 et seq.  Upon

consideration of the motion, opposition, and reply, and the entire record in this case, the Court

concludes that there are genuine issues of material fact in dispute with respect to plaintiff's

termination and that the defendant therefore is not entitled to judgment as a matter of law on that

claim.  The Court concludes that defendant is entitled to judgment as a matter of law with respect

---

[1]        The briefs submitted in connection with this motion include: Memorandum of
Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Mot.");
Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for
Summary Judgment ("Opp.").

        The depositions and declaration upon which the Court relies are:  Deposition of
Vijayakumar Moses ("Moses Dep."), Def. Exs. 3, 28, Pl. Ex. 4;  Declaration of Vijaykumar Moses
("Moses Decl."), Pl. Ex. 5;  Deposition of Alem Moges ("Moges Dep."), Def. Ex. 3;  Deposition
of Helen Mitchell, ("Mitchell Dep.") Def. Ex. 2, Pl. Ex. 2;  and Deposition of Dennis
Hermonstyne ("Hermonstyne Dep."), Def. Ex. 4, Pl. Ex. 1.

to the other adverse employment actions alleged by plaintiff, however, and will enter judgment

for defendant as to those claims.

## I.  BACKGROUND

### *A.  Procedural History*

Plaintiff Vijaykumar Moses alleges that he was subjected to various adverse

employment actions and eventually terminated in retaliation for filing a discrimination case with

this Court in February 1999.  See Moses v. Howard University Hospital, Civil Action No. 99-

0410 (D.D.C. filed Feb. 22, 1999).  In that case, plaintiff alleged race and national origin

discrimination and retaliation in violation of Title VII; race discrimination and retaliation in

violation of the DCHRA; and age discrimination in violation of the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.  On January 30, 2001, Judge

Huvelle entered summary judgment for defendant on all the claims except the ADEA claim.

Moses v. Howard University Hospital, Memorandum Opinion, Civil Action No. 99-0410

(D.D.C. Jan. 30, 2001).  The parties settled the ADEA claim on or about May 17, 2001, and the

action was voluntarily dismissed with prejudice.

Plaintiff was terminated in October 2000 while his discrimination case was

pending before this Court.  Thereafter, he filed complaints with the Equal Employment

Opportunity Commission and the District of Columbia Office of Human Rights, and received a

"right to sue" letter from the EEOC on September 14, 2001.  Def. Ex. 5, EEOC Charge of

Discrimination and Right to Sue Letter.  On December 6, 2001, plaintiff filed the instant case

alleging retaliation in violation of Title VII and the DCHRA.

2

*B.   Facts*

Plaintiff Vijaykumar Moses was employed as a senior computer operator at Howard University Hospital from November 1985 until October 2000, when he was terminated. Def. Ex. 1, Plaintiff's Personnel Records.   Plaintiff's job responsibilities included supervising the operation of all data processing equipment for the shift, helping staff with "recognition and correction of production problems" and assessing computer problems.  Def. Ex. 16, Senior Computer Operator Position Description.  Immediately prior to his termination, plaintiff worked the 4 p.m. to midnight shift.  Moges Dep. at 37.  Mr. Moses' immediate supervisor was Helen Mitchell, Manager of Systems Analysis and Planning and Interim Manager of Computer Operations.  Mitchell Dep. at 11-14.  From 1999 to 2000, Ms. Mitchell shared supervision of  the computer center with Alem Moges, then the manager of Network Services.  Hermonstyne Dep. at 27-28.  Mr. Moges' schedule overlapped with plaintiff's schedule so that Mr. Moges had more contact with Mr. Moses than Ms. Mitchell did.  Moges Dep. at 8, 10-11;  Hermonstyne Dep. at 18.  Mr. Moses disputes whether Mr. Moges had the authority to supervise him because Mr. Moges was not his direct supervisor.  Moses Dep. at 26;  Hermonstyne Dep. at 28.

Plaintiff and defendant agree that Mr. Moges, Ms. Mitchell, and Mr. Hermonstyne first became aware of the previous lawsuit upon which the instant retaliation suit is predicated in or around January or very early February of 2000, when Mr. Moges and Mr. Hermonstyne learned that they were to be deposed.  <u>See</u> Moges Dep. at 40; Mitchell Dep. at 43; <u>see</u> <u>also</u> Moses Dep. at 42 (plaintiff never spoke to Mr. Moges, Ms. Mitchell or Mr. Hermonstyne about his lawsuit).

1.  Events Prior to January 2000

Plaintiff's own handwritten notes indicate that management warned him about sleeping on the job in May of 1999.  Def. Ex. 7, Plaintiff's Notes.  On Aug. 4, 1999, Mr. Moges reprimanded plaintiff after catching him sleeping for at least ten minutes on the job.  Def. Ex. 10, Moges Note.  Mr. Moges also told plaintiff that he previously had seen plaintiff sleeping at work, and plaintiff responded that his cholesterol and diabetes medicines make him tired and force him to sleep.  Mr. Moges threatened to write up plaintiff for dereliction of duty if he caught him sleeping again.  Id.  Sleeping in the computer room was specifically prohibited by the Hospital.  See Def. Ex.17, 1997 Management Information Systems Memorandum ("Individuals found sleeping in the Computer Room, will be subject to disciplinary action.").

In a July 1999 performance evaluation, Ms. Mitchell gave plaintiff a "superior" rating out of the following categories, in descending order:  excellent, superior, average, unsatisfactory.  Def. Ex. 15, July 30, 1999 Personnel Evaluation of Moses ("1999 Eval.") at 6. She commented in the evaluation that plaintiff  "needs to take a more positive attitude toward his position, responsibilities and leadership expectancies."  Id.  In response, plaintiff asked for more training, and wrote in the employee comments section: "I do an excellent job all the time so I must get an excellent evaluation."  Id.  Ms. Mitchell testified in her deposition that she gave plaintiff the benefit of the doubt on the evaluation because she was new to the job, but she said that often he could not perform assigned tasks, troubleshoot and "grasp" new technology. Mitchell Dep. at 31.

On October 1, 1999, Mr. Moges placed plaintiff on administrative leave with pay for two days after an argument over the conditions of plaintiff's dinner break  Def. Ex. 11, Moses

Security Department Report, Memo to Moses from Moges.  Plaintiff and defendant agree that

Mr. Moges told plaintiff to take a dinner break.  When plaintiff did not do so, Mr. Moges asked

how long plaintiff's current task would take.  According to Mr. Moges, plaintiff accused Mr.

Moges of harassing him and trying to catch him sleeping, and called security to report Mr.

Moges.  Id.  Plaintiff alleged that Mr. Moges harassed him by calling him crazy and threatening

to fire him if he sleeps.  Id.  On October 4, 1999, plaintiff also alleged that Mr. Moges made a fist

in a threatening gesture during the October 1 argument, although plaintiff did not assert this in

his initial, same-day complaint to security. Id.  After a meeting with management on October 5,

1999, plaintiff agreed to take standard 45-minute breaks instead of the one-hour breaks he had

sought, and to follow the hospital's break policy in the future.  Def. Ex. 15, October 7, 1999

Hermonstyne Memo and Summary of Meeting.  Mr. Hermonstyne recommended the same day

that plaintiff be terminated for "distorting the facts" about the incident, as well as for sleeping on

the job on August 4, 1999.  Id.

　　　　　On November 2, 1999, Janice Viera reported to Mr. Hermonstyne that plaintiff

had been more than an hour late to a computer training class, had been "inattentive" and found

the class difficult to follow.  Def. Ex. 26, Janice Viera Memo.  Mr. Moges sent plaintiff a "final

written warning," dated November 22, 1999, that stated:  "Further incidents of unprofessional

conduct and bouts of insubordination will result in further disciplinary action, including and up

to termination of your employment from Howard University Hospital."  Def. Ex. 12, Final

Written Warning.

2.  Events in and after January 2000

Although plaintiff filed the previous case in this Court against defendant in February 1999, Mr. Moses' superiors did not learn of the lawsuit until around the time of Mr. Moges' and Mr. Hermonstyne's depositions taken in that case in early 2000.  <u>See</u> Mitchell Dep at 43;  Moges Dep at 77-78.   Mr. Moges also testified that he did not know about plaintiff's EEOC complaint of discrimination filed in May 1998 (plaintiff filed an amended complaint adding retaliation in June 1998) until the time of the deposition.  Moges Dep. at 12.

Plaintiff testified that after the depositions in the earlier case in early 2000:

No one would talk to me. Everyone change their face, became no communication . . . .  Work area look like a big battlefield . . . . [Moges] challenge me three, four times. We are in the same ship. You won't be here. You will be out of this ship. I am the captain of this ship.

Moses Dep. at 55.  On June 30, 2000, Ms. Mitchell gave plaintiff a performance evaluation in which she assessed him as "average," down five points on a 70-point scale from the previous year's rating.  Pl. Ex. 2, Dep. Ex. 2,  Moses 2000 Performance Evaluation.  Ms. Mitchell also wrote in the appraisal that plaintiff had taken a sick day each pay period for several months, often calling in only one hour before his shift.  <u>Id</u>.  Plaintiff responded to the evaluation: "I am sick means I am sick.  Now you are questioning my sickness . . . your evaluation is unfair and it is only a personal attack against me, so I wouldn't sign it." <u>Id</u>.

Plaintiff and defendant agree that three events immediately preceded plaintiff's termination, although they disagree on the exact details.  On October 7, 2000, Jacqueline Street, a control clerk, said plaintiff asked her to help him with a computer/printer error message. Def. Ex. 19, Street Memo.  Ms. Street said that Mr. Moges noticed plaintiff having difficulty, and

6

suggested "power off, power on," to which plaintiff asked "What is that, how do you do that?" Id. According to Ms. Street, Mr. Moges asked plaintiff how a computer operator could not know how to turn on a computer, and plaintiff responded by "harassing" Mr. Moges, telling him to "get out of my face!" and accusing Mr. Moges of hiding job knowledge.  Id.  Ms. Street and Mr. Moges said that Ms. Street tried to quiet plaintiff down.  Id.; Def. Ex. 19, Moges Memo on Unprofessional Behavior.  Plaintiff testified that he was trying to fix the problem by talking to the manufacturer on the phone, but that Mr. Moges came in and yelled at him to fix the printer. Moses Dep. at  29.

On the night of October 16, 2000, plaintiff again faced a problem he could not fix. Yvonne Bracey, a supervisor who reported the incident, said that the staff called plaintiff for help when printers in one of the units were not working.  Plaintiff gave the staff a phone number to call Mr. Moges at home but refused to make the call himself.  Def  Ex. 20, Bracey Memo. When the staff called, the person who answered said she did not know anyone named Moges, and the problem remained unsolved until the next day.  Id.  Mr. Hermonstyne said that standard procedure is for the computer operator to call the manager himself.  Def. Ex. 23, Hermonstyne Termination Memo.  Mr. Hermonstyne said he learned of the problem that night, but that plaintiff said he did not know any details about it, so Mr. Hermonstyne told plaintiff he was useless.  Id.  Mr. Hermonstyne asked a computer operator starting on the next shift to go to the unit to try and solve the problem, but that operator was unsuccessful. Id.

The next day, October 17, 2000, plaintiff answered a phone call about a computer problem.  Plaintiff later reported that Mr. Moges had told him to write down the problem, then "snatched" the paper from him, called him stupid and useless and threatened to fire him.  Def.

7

Ex. 24, Moses' Report to Security, October 17, 2000.  Plaintiff said he was not trained to handle

such a problem, felt threatened by Mr. Moges and accused him of "hiding job knowledge" from

him. Id.  Mr. Moges contends that plaintiff's message about the problem contained insufficient

information, and that when he asked plaintiff to find out more, plaintiff refused, saying he was

not qualified to address the problem.  Mr. Moges said he also told plaintiff that if he cannot

assess the problem before automatically passing it to a manager, he is not useful to the

department.  Def. Ex. 21, Memo from Moges to Hermonstyne, October 18, 2000.  After this

incident Mr. Moges put plaintiff on leave for "obscene behavior, insubordination and continuous

poor performance."  Def. Ex. 22, Memo from Moges to Moses, October 17, 2000.

       Mr. Hermonstyne cited the three October incidents in recommending on October

18, 2000 that human resources terminate plaintiff for being "derelict in his duty, insubordinate

and demonstrat[ing] a lackadaisical attitude towards his responsibilities as a Senior Computer

Operator."  Def. Ex. 23, Hermonstyne Termination Memo.  The hospital states that it sent notices

by hand delivery on October 24, 2000 and by certified mail on October 25, 2000, asking plaintiff

to attend a meeting to discuss the incidents of October 16 and 17.  Def. Ex. 25, Hermonstyne

Termination Letters to Moses.  Plaintiff responds that he did not attend the meeting because he

did not receive these notices.  Moses Decl. ¶ 3.   Plaintiff sent two letters to Mr. Hermonstyne by

certified mail, on October 19, 2000 and October 28, 2000, seeking to return to work.  Pl. Exs. 6,

7, Letters from Vijaykumar Moses to Dennis Hermonstine (sic).  He was terminated by letter

from Mr. Hermonstyne on October 31, 2000.  Def. Ex. 25,  Hermonstyne Termination Letters to

Moses.  Plaintiff said that he did not learn of his termination until he received a letter on

December 1, 2000 from human resources. Moses Decl. ¶ 3.  According to his personnel records,

defendant was terminated for "unsatisfactory work performance."  Def. Ex.1, Plaintiff's

Personnel Records.

## II. DISCUSSION

### A. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may

be granted if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with any affidavits or declarations show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c)

Material facts are those that "might affect the outcome of the suit under the governing law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);  see Holcomb v. Powell, 433 F.3d

889, 895 (D.C. Cir. 2006). In considering a summary judgement motion, "the evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Anderson v. Liberty Lobby, Inc., 477 U.S. 255; see  Mastro v. Potomac Electric Power Co., 447

F.3d 843, 849-50 (D.C. Cir. 2006);  Aka v. Washington Hospital Center, 156 F.3d 1284, 1288

(D.C.Cir.1998) (en banc).

The non-moving party's opposition, however, must consist of more than

unsupported allegations or denials and must be supported by affidavits, declarations or other

competent evidence setting forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e);  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The evidence must

allow a jury reasonably to find for the plaintiff, and if the non-movant's evidence is "merely

colorable" or "not significantly probative," summary judgment may be granted.  Anderson v.

Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must produce

more than "a scintilla of evidence to support his claims."  Freedman v. MCI Telecommunications

Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).  In an employment discrimination case, "[u]sually,

proffering evidence from which a jury could find that the employer's stated reasons were

pretextual will be enough to get a plaintiff's claim to a jury." George v. Leavitt, 407 F.3d 405,

413 (D.C. Cir. 2006) (citing Carpenter v. Fed. Nat'l Mortgage Ass'n, 165 F.3d 69, 72

(D.C.Cir.1999) (internal quotations omitted).

## B.   Retaliation

To establish a *prima facie* case of retaliation, "the plaintiff must present evidence

that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse action

against her; and (3) the adverse action was causally related to the exercise of her rights."

Holcomb v. Powell, 433 F.3d at 901-02 (internal quotations and citations omitted); see also

Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006).  An employee's burden at this stage

"is not great;  he merely needs to establish facts adequate to permit an inference of retaliatory

motive."  Holcomb v. Powell, 433 F.3d at 903 (quoting McKenna v. Weinberger, 729 F.2d 783,

790 (D.C. Cir. 1984)).  Once an employee makes such a showing, it "raises a 'rebuttable

presumption of unlawful discrimination,'" shifting the burden to the defendant to rebut such

presumption.  Smith v. District of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting Jones

v. Wash. Metro. Area Transit Auth., 205 F.3d 428, 433 (D.C. Cir. 2000)).

A defendant rebuts the presumption of discrimination by offering a legitimate,

non-discriminatory or non-retaliatory reason for its action.  See Holcomb v. Powell, 433 F.3d at

901; see McDonnell Douglas Corp. v. Green, 411 U.S. 792 at 802-05 (1973).   If the defendant

does so, "the presumption of discrimination 'simply drops out of the picture,' and 'the sole

remaining issue [i]s discrimination *vel non*.'"   Mastro v. Potomac Electric Power Co., 447 F.3d

at 854 (quoting Holcomb v. Powell, 433 F.3d at 896 and Reeves v. Sanderson Plumbing Prods.,

530 U.S. 133, 142 (2000) (other internal citations omitted)).   At that point, the Court must assess

"whether a reasonable jury could infer intentional discrimination' from the plaintiff's prima facie

case and any other evidence the plaintiff offers to show that the actions were discriminatory or

that the non-discriminatory justification was pretextual."   Smith v. District of Columbia, 430

F.3d at 455 (quoting Murray v. Gilmore, 406 F.3d 708, 713 (D.C. Cir. 2005)).   See also Mastro

v. Potomac Electric Power Co., 447 F.3d at 854 (at this point, to survive summary judgment,

plaintiff must show that "a reasonable jury could conclude from all of the evidence that the

adverse imployment decision was made for a discriminatory reason.") (quoting  Holcomb v.

Powell, 433 F.3d at 896).  "All of the evidence" that the Court must consider is

> any combination of (1) evidence establishing the plaintiff's prima
> facie case;  (2) evidence the plaintiff presents to attack the
> employer's proferred explanation for its actions; and (3) any further
> evidence of discrimination that may be available to the plaintiff,
> such as independent evidence of discriminatory statements or
> attitudes on the part of the employer.

Mastro v. Potomac Electric Power Co., 447 F.3d at 855 (citing Holcomb v. Powell, 433 F.3d at

896 and Aka v. Wash. Hosp. Ctr., 156 F.3d at 1289).

### 1. Plaintiff's Termination

Defendant and plaintiff agree that plaintiff has met the requirements of the first

two prongs of the *prima facie* test regarding plaintiff's termination.  First, plaintiff engaged in a

protected activity by making a discrimination complaint to the EEOC in 1998 and filing a lawsuit

in 1999 based on that complaint.  Second,  defendant thereafter took an adverse action against

plaintiff by terminating him from employment. The parties disagree over whether plaintiff has

satisfied the third prong, which requires a causal connection between the protected activity and

the adverse action.  Finally, defendant argues that even if plaintiff has succeeded in making out a

*prima facie* case, he has not demonstrated that the legitimate, non-retaliatory reason articulated

by defendant for his termination is pretextual.

A plaintiff may establish a causal connection between his participation in a

protected activity and an adverse action through temporal proximity alone by showing that (1)

the employer knew that the plaintiff engaged in protected activity, and that (2) the adverse action

took place shortly after plaintiff's participation in that activity.  See Holcomb v. Powell, 433 F.3d

at 903;  see also McKenna v. Weinberger, 729 F.2d at 791 (plaintiff established *prima facie*

retaliation case because her discharge occurred  "so closely" (22 days) after she complained

about sexism).  Courts generally have accepted time periods of between a few days and a few

months between the protected activity and the adverse action, but have seldom allowed periods

of more than a year to create the inference of a causal connection.  See Brodetski v. Duffey, 199

F.R.D. 14, 17 (D.D.C. 2001) (citations omitted).  "But such closeness in time does not inevitably

or necessarily support an inference of causation, particularly where the inference is undermined

by the timing of other related events."  Bush v. Engleman, 266 F. Supp. 2d 97, 103 (D.D.C.

2003) (no inference of causation despite only several months lapse because personnel changes

already had been planned);  see also Chandamuri v. Georgetown University, 274 F.Supp. 2d 71,

85 (D.D.C. 2003) (noting that "where 'mere temporal proximity' is the only evidence of

12

causation, the proximity must be 'very close,'" and that a three to four month proximity has been held to be insufficient) (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

Plaintiff argues that the accurate measure of time should start from when his managers on the ground first found about out his original discrimination lawsuit, which was apparently at or around the time that each of the managers was deposed in relation to that suit in January or February of 2000.  Opp. at 10-11.  Plaintiff testified that he never talked to Mr. Hermonstyne, Mr. Moges or Ms. Mitchell about the lawsuit he filed in February 1999.  Moses Dep. at 12.  Mr. Hermonstyne was deposed on January 27, 2000.  See Hermonstyne Dep.  Mr. Moges was deposed on February 1, 2000.  See Moges Dep.  Ms.  Mitchell testified that she learned about the lawsuit after Mr. Hermonstyne complained about his deposition.  Mitchell Dep. at 43-44.  Mr. Moses argues that the Court can infer a retaliatory motive based on the fact that he was first given a less favorable evaluation in June 2000, less than six months after the depositions, and that he was fired in October 2000, less than ten months after these three managers discovered that he had filed a discrimination suit.

Defendant counters by pointing to the fact that these managers had documented problems with plaintiff starting at least in May 1999 – well before they were aware of Mr. Moses' discrimination complaint and earlier lawsuit.  Prior to becoming aware of the lawsuit, Mr. Moses' managers had already done the following:  reprimanded him for sleeping on the job; told him to improve his attitude and motivation;  placed him on administrative leave for refusing to follow break policies and then arguing about it; criticized him for tardiness and not taking computer training classes seriously; and gave him a final written warning in November 1999 that further unprofessional conduct would prompt his termination.  Even considered in the light most

13

favorable to plaintiff, defendant argues, none of these actions could have been evidence of retaliation because they occurred before the managers knew about his discrimination complaints and discrimination lawsuit.  The Court agrees that even though the 1999 incidents could not themselves be considered retaliatory, they provide context for evaluating later events that resulted in a lower evaluation score for Mr. Moses in June 2000 and the conflicts immediately preceding plaintiff's termination in October 2000.  They therefore help to explain defendant's non-retaliatory reasons for the termination.

Nevertheless, drawing all reasonable inferences in plaintiff's favor, as the Court must on a motion for summary judgment, the Court finds that plaintiff has made out a *prima facie* case that his termination was retaliatory.  First, plaintiff describes a change in the atmosphere of the workplace after his supervisor's learned of his lawsuit from the early 2000 depositions, and specifically references a threat by Mr. Moges that plaintiff would be terminated. Moses Dep. at 55 ("[Mr. Moges] challenge me three, four times. We are in the same ship. You won't be here. You will be out of this ship. I am the captain of this ship.").  Second, plaintiff has demonstrated that at least one adverse action -- his lower evaluation score in June 2000 -- took place within approximately five months of his managers having learned about his previous suit. Four months later, he was fired.  In addition to the timing of these two adverse employment actions taken in the months following his supervisors' discovery of the 1999 discrimination case, plaintiff also has presented evidence that the decisionmaker in his termination -- Mr. Hermonstyne -- was "complaining" about being deposed in that case, providing additional support for the inference that there was a causal connection between that lawsuit and both adverse actions that followed.   Finally, defendant states that plaintiff's failure to respond to Mr.

14

Hermonstyne's letters left "little alternative but to terminate his employment."  Mot. at 11.

Plaintiff maintains, however, that he never received those letters, and furthermore asserts that he

sent letters of his own to Mr. Hermonstyne during that time period asking what was happening

with respect to the incidents, to which he never received a reply.  The Court therefore finds that

Mr. Moses has made out a *prima facie* case of retaliation.  The burden now shifts to defendant to

provide a non-discriminatory reason for terminating plaintiff and rebut the presumption of

discrimination.  See Smith v. District of Columbia, 430 F.3d at 455.

      Defendant provides numerous witnesses and documents to support its non-

discriminatory explanation for terminating plaintiff, and substantial evidence that plaintiff's

termination was due to a series of incidents in October 2000.  Defendant has further supported its

explanation with evidence that plaintiff was a difficult employee whom hospital managers

considered unreliable and had threatened to fire in 1999, well before they  knew about his

discrimination case before this Court.  Defendant has adequately rebutted the presumption

created by plaintiff's *prima facie* case.  The Court therefore now must consider the sole issue

before it: "discrimination *vel non*.'"   Mastro v. Potomac Electric Power Co., 447 F.3d at 854.

      Plaintiff counters defendant's explanation of his termination with his own version

of these events, a version supported almost exclusively by his own testimony.  Whether he can

prove any of his allegations at trial on that basis alone, particularly in light of the evidence

defendant likely will present, remains to be seen.  Nevertheless, for the same reasons on which

the Court concluded that plaintiff has made out his *prima facie* case, the Court finds that he has

raised genuine issues of material fact with respect to the events leading up to his termination that

the Court "cannot resolve without evaluating witness credibility and weighing the evidence,

neither of which is appropriate at the summary judgment stage." Czeklaski v. Peters, ---F.3d---,
2007 WL 283443 at *8 (D.C. Cir. 2007). See also George v. Leavitt, 407 F.3d at 413 ("[A]t the
summary judgment stage, a judge may not make credibility determinations, weigh the evidence,
or draw inferences from the facts -- these are jury functions, not those of a judge ruling on a
motion for summary judgment."); Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000) (holding
that plaintiff's evidence supporting *prima facie* case could also permit a jury to conclude that
defendant's articulated non-discriminatory reason was a pretext for retaliation).

### 2.  Other Adverse Employment Actions

Plaintiff alleges in his complaint that the hospital retaliated against him in ways
other than termination.  He states that he was criticized; called dumb; "constantly told I speak
foreign language and cannot be understood;" and wrongfully denied promotions, raises, training
and overtime for purposes of retaliation.  Compl. at 3-4.  Defendant argues that summary
judgment should be granted because "there is no evidence to support some of the vague claims"
set forth in Mr. Moses' complaint.  Mot. at 12.  The Court agrees that plaintiff has not
demonstrated even a *prima facie* case because in some cases he has failed to provide evidence to
support any reasonable inference that the defendant took the alleged adverse action, and because
in other cases, the action alleged occurred before he maintains the relevant persons became aware
of his discrimination complaint, and therefore no causation can be inferred from any of the
actions taken.

Plaintiff presented no evidence of being harassed because he spoke a foreign
language or could not be understood.  Mr. Hermonstyne admitted calling plaintiff "useless"

when plaintiff could not do the requested task, Def. Ex. 23, Hermonstyne Termination Memo, and Mr. Moges criticized plaintiff for not being able to do what Moges considered plaintiff's job. But these criticisms are not the basis of plaintiff's retaliation claim.  Plaintiff's claims that he was denied overtime, promotions and training in retaliation for his discrimination complaint are similarly unsupported by the evidence.  Ms. Mitchell testified that all computer operators were eligible for overtime, but that she does not remember plaintiff requesting it and that the unit did not have much overtime available because it was adequately staffed.  Mitchell Dep. at 24.  The one piece of evidence plaintiff submitted in support of his overtime contention is a hospital pay log showing that for the pay period ending October 23, 1999, plaintiff worked 80 hours and his colleague, Young Choi, worked 112 hours.  This pay period took place, however, before plaintiff's managers allegedly knew about his discrimination complaints, so any overtime allotment favoring Choi could not have been retaliatory.  Similarly, plaintiff was denied a promotion after applying on June 23, 1998, well before his managers were aware of any complaint and before he filed the discrimination suit upon which this retaliation claim is predicated.  Finally, plaintiff attended a computer training class in the autumn of 1999 and was reported on November 2, 1999 to have done poorly.  Def. Ex. 26, Viera Memo.  Again, this incident occurred before he maintains that his managers were aware of his earlier discrimination suit.  Plaintiff submits no other evidence that he was denied other opportunities.  The Court therefore will grant defendant's motion with respect to these allegations of retaliation.

17

III.   CONCLUSION

For the reasons stated above, this Court concludes that genuine issues of material fact remain with respect to Mr. Moses' termination claim.  Defendant therefore is not entitled to summary judgment on this claim.  With respect to all other adverse employment actions that Mr. Moses alleges were taken in retaliation for his filing a discrimination complaint and lawsuit, the Court will enter judgment for the defendant.  A separate Order consistent with this Opinion will issue this same day.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  February 12, 2007