UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

VIJAYAKUMAR MOSES,

       Plaintiff,

v.

HOWARD UNIVERSITY HOSPITAL,

       Defendant.

Civil Action No. 01-2528 (PLF)

---

## OPINION

Plaintiff Vijayakumar Moses brought this suit against his former employer, Howard University Hospital ("Howard"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the District of Columbia Human Rights Act, D.C. CODE §§ 2-1401 *et seq.* ("DCHRA"). The case has been pending for some time and, on February 12, 2007, the Court granted Howard's motion for summary judgment on all claims except plaintiff's claim that he was unlawfully retaliated against when Howard terminated him in October 2000. The case is now before the Court on Howard's renewed motion for summary judgment which, for the reasons that follow, the Court will grant.[1] The Court will also deny plaintiff's motion to add an additional plaintiff and deny his request for a hearing.

---

[1] The briefs submitted in connection with this motion include: Defendant's Renewed Motion for Summary Judgment ("Def.'s Mot."); Plaintiff's Opposition to Motion for Summary Judgment ("Pl.'s Opp."); Defendant's Reply in Support of Its Renewed Motion for Summary Judgment ("Def.'s Reply"); Plaintiff's Motion to Add Additional Plaintiff; Defendant's Response to Plaintiff's Motion to Additional Plaintiff; and Plaintiff's Request for Hearing.

I. BACKGROUND

On February 22, 1999, while still employed by Howard University Hospital, Mr. Moses filed a lawsuit against his then-employer. See Moses v. Howard University Hospital, Civil Action No. 99-0410 (D.D.C. filed Feb. 22, 1999). In that case, Mr. Moses alleged race and national origin discrimination and retaliation in violation of Title VII; race discrimination and retaliation in violation of the DCHRA; and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). On January 30, 2001, Judge Huvelle entered summary judgment for Howard on all of the claims in that case except Mr. Moses' ADEA claim. See Moses v. Howard University Hospital, Civil Action No. 99-0410, Memorandum Opinion (D.D.C. Jan. 30, 2001). The parties settled the ADEA claim on or about May 17, 2001, and the case was voluntarily dismissed with prejudice.

While Civil Action No. 99-0410 was still pending, Howard terminated Mr. Moses in October 2000. He filed complaints with the Equal Employment Opportunity Commission and the District of Columbia Office of Human Rights, and received a "right to sue" letter from the EEOC on September 14, 2001. On December 6, 2001, Mr. Moses filed this suit, alleging retaliation in violation of Title VII and the DCHRA. He based his claim of retaliation on his October 2000 termination and various other alleged adverse employment actions. On February 12, 2007, this Court entered summary judgment in favor of Howard on all of Mr. Moses' claims except his claim that Howard unlawfully retaliated against him by terminating him. See Moses v. Howard University Hospital, 474 F. Supp. 2d 117, 127 (D.D.C. 2007). The Court subsequently set a trial on the remaining claim for January 28, 2008.

On December 10, 2007, Howard sought permission to file a renewed motion for

summary judgment on the ground that "during the course of preparing for trial, [Howard] learned through a public records search that Plaintiff had filed two bankruptcy petitions during the pendency of [the instant case]" and failed to disclose the existence of this lawsuit in those petitions. See Def.'s Mot. at 2-3. Howard argued that Mr. Moses' failure to disclose this lawsuit in his bankruptcy proceedings barred him from maintaining his claim before this Court under the doctrine of judicial estoppel. By Order of January 16, 2008, the Court permitted Howard to file its renewed motion, vacated the January trial date and stayed all proceedings pending resolution of that motion. Mr. Moses thereafter filed an opposition to the renewed motion and two supplemental motions: one seeking to add Janet Nesse (the trustee in Mr. Moses' 2003 bankruptcy proceeding) as a plaintiff in this case, and the other seeking an oral hearing. Defendant has opposed both of Mr. Moses' supplemental motions.

## II. STANDARD OF REVIEW

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, 'there is no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

III.  DISCUSSION

*A.  The Parties' Arguments*

Howard argues, and Mr. Moses does not dispute, that Mr. Moses filed two petitions for bankruptcy during the pendency of this lawsuit: one in 2003 (under Chapter 7 of the Bankruptcy Code) and one in 2007 (under Chapter 13 of the Bankruptcy Code).  See Defendant's Statement of Undisputed Material Facts in Support of Its Renewed Motion for Summary Judgment ¶¶ 11-22 ("Def.'s Facts").[2]  Both proceedings were filed in the United States Bankruptcy Court for the District of Maryland.  In both cases, Mr. Moses was required to execute under penalty of perjury a "Statement of Financial Affairs" setting forth – among other things – "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."  Mr. Moses failed to disclose the existence of this lawsuit in both proceedings.  See Def.'s Facts ¶¶ 13-14 (discussing 2003 Statement of Financial Affairs), 18-19 (discussing 2007 Statement of Financial Affairs).[3]  Howard claims, and Mr. Moses does not dispute, that Mr. Moses ultimately obtained a discharge

---

[2] "Chapter 13 allows a portion of a debtor's future earnings to be collected by a trustee and paid to creditors.  A Chapter 13 debtor does not receive a discharge of his debts; rather, the debtor is allowed to extend or reduce the balance of his debts through a plan of rehabilitation.  In contrast, Chapter 7 allows a trustee to collect and liquidate a debtor's assets, if any, in exchange for a discharge of the debtor's debts."  Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 n.1 (11th Cir. 2002).

[3] In his 2003 Statement of Financial Affairs, Mr. Moses did list "a case captioned Primus Automotive Financial Services, Inc./Ford Motor Credit Co. v. Moses, Civil Action No. 19259-01, a vehicle repossession action in the District Court for Upper Marlboro, Maryland that he stated culminated in a September 13, 2002 judgment garnishing [his] wages."  Def.'s Facts ¶ 13.  In addition, in his 2007 Statement of Financial Affairs, Mr. Moses listed "a garnishment proceeding against him in the Prince George's District Court, captioned Harbor Bank v. Moses, Civil Action No. 34603-2005."  Id. ¶ 19.

5

of unsecured debts in the amount of approximately $20,000 as a result of the 2003 bankruptcy proceeding. See Def.'s Facts ¶ 15. Mr. Moses' 2007 bankruptcy proceeding was closed when the bankruptcy court rejected Mr. Moses' Chapter 13 confirmation plan. See Pl.'s Opp. ¶ 3; Def.'s Mot. ¶¶ 20-21.

Mr. Moses claims that his failure to disclose was inadvertent on both occasions. See Pl.'s Opp. ¶ 5.[4] Mr. Moses further argues that he has cured his failure to disclose by contacting the trustee in his 2003 bankruptcy proceeding and asking her to re-open his 2003 bankruptcy case, add the instant lawsuit to his schedules, and intervene as a plaintiff in this case. Id. ¶¶ 7-15.[5] As noted above, Howard argues that the doctrine of judicial estoppel bars Mr. Moses from asserting his remaining claim.

### B. Judicial Estoppel

Judicial estoppel is an equitable doctrine that prevents parties from abusing the legal system by taking a position in one legal proceeding that is inconsistent with a position taken in a later proceeding. See New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001); Elemary v. Holzmann A.G., 533 F. Supp. 2d 116, 125 n.6 (D.D.C. 2008). The doctrine "protect[s] the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions

---

[4] Relatedly, Mr. Moses also seems to argue that this Court should hold the attorney who represented him in the 2003 bankruptcy proceeding – not him – responsible for failing to disclose this lawsuit in 2003. See Plaintiff's Motion to Add Additional Plaintiff ¶ 2. The Court rejects this argument. See Barger v. City of Cartersville, 348 F.3d 1289, 1295 (11th Cir. 2003) (concluding, in similar circumstances, that "the attorney's omission is no panacea").

[5] Mr. Moses' position seems to be that there is no need to cure his failure to disclose this lawsuit in the 2007 bankruptcy proceeding because his Chapter 13 plan was rejected by the bankruptcy court in that case. See Pl.'s Opp. ¶ 3.

according to the exigencies of the moment." Id. at 749-50; see also Konstantinidis v. Chen, 626 F.2d 933, 938 (D.C. Cir. 1980) (purpose of the doctrine is to prevent "improper use of judicial machinery"); Scarano v. Central Rail Co. of New Jersey, 203 F.2d 510, 513 (3d Cir. 1953) (observing that the application of judicial estoppel prevents the use of "intentional self-contradiction . . . as a means of obtaining an unfair advantage"). As the Supreme Court recently explained, "'[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." New Hampshire v. Maine, 532 U.S. at 750 (quoting Allen v. Zurich Insurance Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). The Supreme Court observed, however, that courts generally consider three factors when determining whether to apply the doctrine of judicial estoppel in a particular case:

> First, a party's later position must be "clearly inconsistent" with its earlier position. . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," [Edwards v. Aetna Life Insurance Co., 690 F.2d 595, 599 (6th Cir. 1982)]. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. at 750-51. These factors, the Court emphasized, are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 751. Rather, they serve as guideposts and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." Id.

Many courts have applied the doctrine of judicial estoppel to bar plaintiffs from pursuing claims – including employment discrimination claims – because those plaintiffs failed to disclose the existence of their claims to bankruptcy courts in prior or parallel bankruptcy

7

proceedings. See Becker v. Verizon North, Inc., No. 06-2956, 2007 WL 1224039, at *4 (7th Cir. Apr. 25, 2007) (plaintiff/debtor failed to disclose employment discrimination claims to bankruptcy court; court affirmed the district court's grant of summary judgment on judicial estoppel and standing grounds); Tyler v. Federal Express Corp., 206 F. App'x 500, 500 (6th Cir. 2006) (affirming on judicial estoppel grounds); Baker v. Dep't of Interior, 125 F. App'x 151, 151 (9th Cir. 2005) (same); Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir. 2005) ("Judicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset."); Barger v. City of Cartersville, 348 F.3d at 1292-93 (plaintiff/debtor failed to disclose employment discrimination claims to bankruptcy court; court affirmed district court's ruling that plaintiff/debtor was estopped from pursuing claims for monetary damages).[6] The Court concludes that the reasoning of these cases amply supports the application of the doctrine of judicial estoppel in this case. The Court therefore will enter summary judgment in favor of Howard on Mr. Moses' remaining claim.[7]

---

[6] Although Mr. Moses has not raised the point, the Court observes that the D.C. Circuit has expressed some wariness about the doctrine of judicial estoppel. See Konstantinidis v. Chen, 626 F.2d at 937. The Court discounts that expression of wariness for two reasons. First, jurisdiction in the Konstantinidis case – unlike this case – was based on diversity, and the Konstantinidis court declined to apply judicial estoppel primarily because the doctrine (in its view) lacked vitality under District of Columbia law. Incidentally, there are recent indications that this view is no longer accurate. See Porter Novelli, Inc. v. Bender, 817 A.2d 185 (D.C. 2003). Second, the Konstantinidis court did not have the benefit of the Supreme Court's reasoning and decision in New Hampshire v. Maine. See In re Enron Corp. Securities, Derivative & "ERISA" Litigation, 391 F. Supp. 2d 541, 576 n.41 (S.D. Tex. 2005).

[7] Some courts have held that it is inappropriate to apply the doctrine of judicial estoppel to bar claims for injunctive relief. See Barger v. City of Cartersville, 348 F.3d at 1297. Mr. Moses is not seeking injunctive relief.

*C. Mr. Moses' Actions Justify the Invocation of Judicial Estoppel*

Again, the doctrine of judicial estoppel is not reducible to a general formula, and the factors identified by the Supreme Court in New Hampshire v. Maine are not intended to be "inflexible prerequisites" to application of the doctrine. New Hampshire v. Maine, 532 U.S. 751. As it turns out, however, at least three of the principal considerations that "firmly tip[ped] the balance of equities in favor" of applying the doctrine in New Hampshire v. Maine are also present in Mr. Moses' case. Moreover, one "additional consideration[]" militates in favor of applying the doctrine here. Id.

1. New Hampshire v. Maine Factors

To begin with, it is undisputed that Mr. Moses has made inconsistent statements in different legal proceedings. See New Hampshire v. Maine, 532 U.S. at 750 (judicial estoppel appropriate when a party's later position is "clearly inconsistent" with his earlier position). Specifically, he has failed to disclose the existence of this lawsuit in not one but two bankruptcy proceedings while pressing his claims vigorously before this Court. See Def.'s Facts ¶¶ 13-14, 18-19; see also Barger v. City of Cartersville, 348 F.3d at 1294 (inconsistent statement requirement was satisfied when plaintiff "submitted her Statement of Financial Affairs under oath to the bankruptcy court" and failed to disclose the existence of lawsuit).[8]

---

[8] This is undisputed both in the sense that Mr. Moses' opposition to Howard's renewed motion for summary judgment does not include a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," see L. CIV. R. 7(h) – thereby allowing the Court to regard Howard's version of the facts as conceded – and in the sense that Mr. Moses' opposition acknowledges his failure to disclose this lawsuit in his bankruptcy filings. See Pl.'s Opp. ¶¶ 5-6.

9

Nor is the Court persuaded by Mr. Moses' claim that he inadvertently or mistakenly – and hence excusably – failed to disclose this lawsuit. See New Hampshire v. Maine, 532 U.S. at 753 (inconsistent statements made because of inadvertence or mistake generally do not justify application of judicial estoppel); see also Burnes v. Pemco Aeroplex, Inc., 291 F.3d at 1286 (noting that "the doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence"). First, Mr. Moses offers no competent evidence to support his inadvertence claim. See FED. R. CIV. P. 56(e)(2) (when party moves for summary judgment, non-movant's opposition must be supported by affidavits, declarations or other competent evidence; mere statements in pleadings will not do). Second, "deliberate or intentional manipulation [of the judicial process] can be inferred from the record . . . where the debtor has knowledge of the undisclosed claims and has motive for concealment." Barger v. City of Cartersville, 348 F.3d at 1294 (internal quotation marks and citation omitted); see also In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999). Here, all acknowledge that Mr. Moses had knowledge of this lawsuit when he initiated both bankruptcy proceedings, see Pl.'s Opp. ¶ 4, and he certainly had a financial motive for failing to disclose his claims. See De Leon v. Comcar Industries, Inc., 321 F.3d 1289, 1291 (11th Cir. 2003); see also Jethroe v. Omnova Solutions, Inc., 412 F.3d at 601.

Lastly, there can be little doubt that the bankruptcy courts were misled by Mr. Moses' inaccurate statements, and that Mr. Moses benefitted by his failure to disclose. See New Hampshire v. Maine, 532 U.S. at 750 (judicial estoppel appropriate when a party persuades a court to accept his earlier position); see also id. at 751 (inconsistent statements threaten judicial integrity only when a party succeeds in the prior proceeding). There is no evidence to suggest

that the bankruptcy courts failed to rely on the inaccurate statements contained in Mr. Moses' 2003 and 2007 Statements of Financial Affairs. See Autos, Inc. v. Gowin, 244 Fed. App'x 885, 891 (10th Cir. 2007) (finding, where plaintiff submitted false bankruptcy forms, that bankruptcy court relied on those forms). Moreover, Mr. Moses obtained a discharge of unsecured debts in the amount of approximately $20,000 as a result of the Chapter 7 bankruptcy petition he filed in 2003. See Def.'s Facts ¶ 15. From this evidence the Court concludes that Mr. Moses persuaded two bankruptcy courts to accept his inaccurate statements about this lawsuit, and that his inaccurate statements contributed to his success in the 2003 bankruptcy proceeding. See Burnes v. Pemco Aeroplex, Inc., 291 F.3d at 1288.

2. Additional Consideration

One "additional consideration[]" weighs in favor of applying judicial estoppel to bar Mr. Moses' claims in this case. See New Hampshire v. Maine, 532 U.S. at 751 ("Additional considerations may inform the doctrine's application in specific factual contexts."). While Mr. Moses did not disclose this lawsuit in his 2003 and 2007 Statements of Financial Affairs, he did disclose *other* lawsuits in those documents. It is significant that those other lawsuits – unlike this one – made Mr. Moses' financial situation seem more dire rather than less dire. See *supra* note 3. Of course, this makes Mr. Moses' claim that he inadvertently failed to disclose this lawsuit highly suspect. It also suggests that Mr. Moses may have "play[ed] fast and loose with the courts." Scarano v. Central Rail Co., 203 F.2d at 513.

### D. Mr. Moses Has Not Cured His Failure to Disclose

One last point requires discussion. Mr. Moses argues that he has cured his failure to disclose this lawsuit by re-opening his 2003 bankruptcy case, amending his 2003 Statement of Financial Affairs, and inviting Ms. Nesse, the trustee in that suit, to intervene in this matter. None of this salvages Mr. Moses' claims. To begin with, the Court concurs with the Eleventh Circuit's view of this "so-called remedy" and its efficacy in preserving the integrity of the judicial process:

> Allowing [a plaintiff/debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

Burnes v. Pemco Aeroplex, Inc., 291 F.3d at 1288. Moreover, the authority and discretion to intervene in Mr. Moses' lawsuit belong to Ms. Nesse; Mr. Moses may not unilaterally inject her into this matter. Not only has Ms. Nesse not attempted to intervene, Mr. Moses has offered no evidence suggesting that she wishes to do so.[9] Thus, Mr. Moses' suggestion that Ms. Nesse might intervene at some later date will not forestall the application of judicial estoppel against him now. See Pavlov v. Ingles Markets, Inc., 236 Fed. App'x 549, 550 (11th Cir. 2007).

---

[9] As Howard points out, Mr. Moses claims that Ms. Nesse wishes to intervene and will intervene, see Plaintiff's Motion to Add Additional Plaintiff ¶ 5, Pl.'s Opp. ¶ 15, but "[t]here is no affidavit in the record that supports [that claim], and Ms. Nesse has not filed a Rule 17 petition to intervene in this action." Def.'s Reply at 9.

IV. CONCLUSION

For the reasons stated above, the Court concludes that there is no dispute that Mr. Moses failed to disclose the existence of this lawsuit in two prior bankruptcy proceedings, and that the doctrine of judicial estoppel therefore bars his remaining claim before this Court. Thus, the Court will enter summary judgment in favor of Howard on Mr. Moses' claim. A separate Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: July 1, 2008