**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VIJAYAKUMAR MOSES, ) ) Plaintiffs ) ) v. ) ) HOWARD UNIVERSITY HOSPITAL, ) ) Defendant. ) ) | Civil Action. No. 1:01-cv-02528 (PLF) |

**DEFENDANT'S RESPONSE TO TRUSTEE'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Pursuant to L.R. 7(b), Defendant Howard University Hospital ("Defendant" or "HUH") through undersigned counsel, respectfully submits this response to the Motion to Enforce Settlement Agreement filed by Janet M. Nesse, Bankruptcy Trustee ("the Trustee"), in this closed matter. (D.E. 96).

**I.     FACTS AND PROCEDURAL POSTURE**

1.     On December 6, 2001, Vijayakumar Moses ("Mr. Moses") filed a lawsuit in the United States District Court for the District of Columbia alleging violations of 42 U.S.C. § 2000e, et seq. ("the Title VII action"). (D.E. 1). In the Complaint, Mr. Moses sought to recover backpay, frontpay, reimbursement for lost benefits, and compensatory and punitive damages from HUH. (Id., Prayer for Relief).

2.     On September 29, 2003, nearly two years after he filed the Title VII action, Plaintiff filed a Chapter 7 petition in Bankruptcy Court. (Ex. 3 to D.E. 60, Petition in Bankruptcy). Question 4 of the 2003 statement of financial affairs ("2003 SOFA") required Mr. Moses to list "all suits and administrative proceedings to which the debtor is or was a party with in one year immediately preceding the filing of this bankruptcy case."

- 1 -

Although he executed the 2003 SOFA under penalty of perjury, Mr. Moses did not, in response to Question 4, disclose this lawsuit to the Bankruptcy Court. (Id.). Instead, in his 2003 SOFA, Mr. Moses listed only a case captioned *Primus Automotive Fin. Services, Inc. / Ford Motor Credit Co. v. Moses*, Civ. Action No. 19259-01, a vehicle repossession action in the District Court for Upper Marlboro, Maryland that he stated culminated in a September 13, 2002 judgment garnishing his wages. The Title VII suit was never disclosed to the Bankruptcy Court.

3. The Bankruptcy Court discharged Mr. Moses' unsecured debts in the amount of approximately $20,000.00 on January 5, 2004 and entered a final decree closing the case on January 5, 2005. (Ex. 5 to D.E. 60, Order Discharging Debtor & Ex. 6 to D.E. 60, Final Decree).

4. In November 2007, during the course of preparing for trial in the Title VII action, HUH learned through a public records search that Mr. Moses filed the 2003 bankruptcy petition (and another petition in 2007) during the pendency of the Title VII case. (Ex. 9 to D.E. 60).

5. On December 10, 2007, HUH filed a Renewed Motion for Summary Judgment seeking dismissal of the case. HUH argued that because Mr. Moses failed to disclose the Title VII lawsuit as an asset to the Bankruptcy Court, the doctrine of judicial estoppel prevented him from recovering or proceeding in the Title VII lawsuit in the District Court.

6. Mr. Moses subsequently contacted the Trustee and sought to reopen the bankruptcy proceedings.

US2000 10964166.1

7.   On January 24, 2008, Mr. Moses' counsel filed a "consent" motion in the Bankruptcy Court purportedly on behalf of the Trustee to close the bankruptcy proceedings.  (Ex. 1 to D.E. 89).  Thereafter, on February 19, 2008, in this Court, Plaintiff filed a "Supplement Motion to Add the Trustee as a Plaintiff."  Plaintiff asserted in his Supplemental Motion that the Trustee wished to pursue the instant case on behalf of the estate.  (D.E. 86, p. 2, ¶10).

8.   On February 21, 2008, the Trustee filed an opposition to Mr. Moses' "consent" motion with the Bankruptcy Court, indicating that Mr. Moses' counsel had not obtained her consent to file the motion.  (Ex. 2 to D.E. 89).   The Trustee refused to close the bankruptcy proceedings.  (Id.).

9.   Throughout February 2008, Plaintiff and HUH were engaged in summary judgment briefing.  Counsel for HUH provided copies of its briefing to the Trustee and requested a meeting with her to discuss this case.

10.   Subsequently, HUH and the Trustee engaged in settlement discussions while HUH's motion for renewed summary judgment was pending before this Court.

11.   On March 4, 2008, HUH responded to Plaintiff's Supplemental Motion Add a Plaintiff.  Defendant served its response to the motion on the Trustee.  (D.E. 89).

12.   The Trustee did not respond to either party's motion and did not file any documents with the Court.

13.   On or about April 3, 2008, the Trustee engaged in settlement discussions with HUH.  Settlement discussions continued for the next few months and a tentative compromise agreement was reached subject to the contingency of the Bankruptcy Court accepting and approving the compromise.

14. On June 26, 2008, the Trustee filed an application for Approval of Compromise or Controversy with the Bankruptcy Court. (Ex. B to D.E. 97).

15. On July 1, 2008, this Court entered summary judgment in favor of HUH in the Title VII action and dismissed the suit with prejudice. (D.E. 91, 93). The Court also denied Plaintiff's Supplemental Motion to Add the Trustee as a Plaintiff. (D.E. 93).

16. On July 1, 2008, HUH notified the Trustee of the Court's Order and immediately withdrew its offer of settlement. (Ex. A attached hereto.).

17. On July 15, 2008, HUH timely filed with the Bankruptcy Court its Opposition to the Trustee's Notice of Settlement of Controversy.

18. The Bankruptcy Trustee did not file a motion to appear in this case until weeks after the Court granted HUH's motion for summary judgment and closed the case.

## II. ARGUMENT

*1. The Trustee's motion is untimely.*

This matter is before the Court on the Bankruptcy Trustee's motion to enforce a "settlement agreement." As the facts outlined above demonstrate, the Trustee did not intervene in this case. The Trustee re-opened the bankruptcy matter on January 24, 2008. She began settlement discussions regarding this case with counsel for the Plaintiff-Debtor and counsel for HUH in February 2008 and a settlement meeting occurred on or about April 3, 2008. The Trustee has implied that the time it took Defendant to present her with a counter-offer had some impact on her delay in seeking substitution in this case. This is not true. The Trustee could have intervened at any time. Despite knowing that summary judgment motions were pending and that she would have to intervene at some point to have standing to agree to dismiss the case (assuming a settlement was reached

and approved by the Bankruptcy Court), she failed to do so.  Nothing prevented the Trustee from intervening in this case.  She has no standing in this case to seek enforcement of the "settlement agreement."  Summary judgment has been granted in favor of HUH. The case is closed.

> 2. *The parties never formalized the alleged settlement agreement and it lacks material terms.*

The Trustee has argued that this Court should enforce a "settlement agreement" that she submitted to the Bankruptcy Court for approval.   Settlement agreements, like other agreements, require the following: 1) offer; 2) acceptance; and 3) consideration. *Hackes v. Hackes,* 446 A.2d 396, 401 (D.C. App. 1982).  The party seeking to enforce an agreement must demonstrate that the parties agreed to all material terms and that they intended to be bound.  *Haney v. Marriott Int'l, Inc.*, No. 05-2501(JDB), 2007 U.S. Dist. LEXIS 74872 at * 23 (D.D.C. Oct. 9, 2007) (citing *New Econ. Capital, LLC v. New Mkts. Capital Group*, 881 A.2d 1087, 1094 (D.C. App. 2005)) (attached hereto as Ex. B). Contrary to the Trustee's assertion, no settlement agreement was reached by the parties. Rather, they agreed on proposed terms with the understanding that the terms required approval from the Bankruptcy Court.  *See* Fed. R. Bank. P. 9019 (in the bankruptcy context, *a settlement is not final until approved by the Bankruptcy Court, in its discretion, after notice and a hearing*) (emphasis included).  At best, the parties' proposed compromise agreement can be characterized as an agreement to agree upon specific terms in the future following approval from the Bankruptcy Court.  Such an executory agreement is not enforceable.  *D.C. Area Cmty. Council, Inc. v. Jackson*, 385 A.2d 185, 187 (D.C. App. 1978) ("If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made;

- 5 -

and the so-called "contract" to make a contract is not a contract at all.") (citations omitted). The parties have not agreed to all of the specific material terms and conditions of the *tentative* agreement, including timing of the payments or the structure of a settlement payment plan, nor did they draft or sign any written instrument. *Duffy v. Duffy*, 881 A.2d 630, 634 (D.C. App. 2005) (payment arrangements constitute a material term). Indeed, the Trustee was aware that HUH needed to employ the resources of an outside third party to compile and confirm the complicated benefit questions related to the settlement offer and payment of the settlement offer. In contrast, HUH was not aware that the Trustee had made the unilateral decision to submit the tentative terms to the Bankruptcy Court for approval until after this Court entered summary judgment.

       3.      *The dismissal of this action rendered the "settlement agreement" unenforceable.*

The settlement negotiations occurred in the bankruptcy context. As explained above, under Rule 9019, a settlement agreement is not final until approved by the Bankruptcy Court. *See* Fed. R. Bank. P. 9019. Approval of a compromise implicitly requires the existence of a controversy. *See Adirondack Ry. Corp.,* 95 B.R. at 873-74 (the bankruptcy court "must have before it an agreement to terminate a controversy demonstrating a meeting of the minds between the adversaries"). Stated differently, the Bankruptcy Code requires that two conditions be met before settlement may occur: 1) the existence of a controversy and 2) approval of the settlement of the controversy by the Bankruptcy Court. *Id*; *see also,* BLACK'S LAW DICTIONARY 289 (7th ed. 1999) (explaining that a condition precedent is, "an act or event, other than lapse of time, that must exist or occur before a duty to perform something promised arises."); *Transcon. Gas Pipe Line Corp. v. Fed. Energy Regulatory Commission*, 659 F.2d 1228, 334 (D.C.

- 6 -

Cir. 1981) (approval by a third party is a condition precedent to settlement); *Psaromatis v. English Holdings I, L.L.C.*, 944 A.2d 472, 484-85 (D.C. App. 2008) (a condition precedent is an event that must occur before performance under a contract becomes due). Where a settlement agreement is predicated "impliedly or expressly" upon a condition precedent, the failure of the condition will excuse all parties to the agreement from performance. *Transcon. Gas Pipe Line Corp*, 659 F.2d at 333-34; *Psaromatis*, 944 A.2d at 484-85. Accordingly, when this Court entered summary judgment in favor of HUH it not only disposed of the Title VII case on the merits and excused the parties to the tentative compromise agreement from future performance, but also obviated the need for its approval or disapproval of the proposed compromise agreement. (D.E. 93, 94).

    *4.*  *The "settlement agreement" fails for lack of mutuality and consideration.*

It is well established that compromise agreements, like other contracts, must contain promises that demonstrate the meeting of the minds. *Adirondack Ry.,* 95 B.R. at 874 (citations omitted); *see also*, *Duffy*, 881 A.2d at 637 (mutual assent is most clearly indicated by the signing of a written document); *Chinn v. Lewin*, 57 App. D.C. 16, 16 (1926) (mutual assent is necessary for the formation of a contract). No such "meeting of the minds" is present here because there is no current offer of settlement from HUH. Immediately after the Court's ruling on July 1, 2008, HUH withdrew the proposed offer of compromise. (Ex. A). This lack of mutuality is fatal to the "settlement agreement."

Finally, even if the Court found that an agreement existed, which it does not, the agreement would still be unenforceable for a lack of consideration. Value is an essential element of consideration. BLACK'S LAW DICTIONARY 300 (7th ed. 1999) (consideration is "something of value" received by a promisor from a promisee). It is a basic principle of

contract law that an executory contract unsupported by consideration may be avoided. *Sloan v. Sloan*, 66 A.2d 799, 801 (D.C. App. 1949) (executory contracts unsupported by consideration may be avoided); *Gwynn v. Gwynn*, 11 App. D.C. 564, 574-75 (D.C. Cir. 1897) ("equity will not enforce a contract . . . that does not rest upon valuable consideration."). HUH's proposed promise to provide Mr. Moses with money and other financial benefits was conditioned upon Mr. Moses' promise to release his claims, including the Title VII claim, and dismiss the case. (*See* Ex. B to D.E. 97). Because the District Court has already dismissed Mr. Moses' Title VII claim, there is no value in Mr. Moses' proposed promise to one day release his claims. Accordingly, the proposed compromise agreement fails for lack of consideration.

### III.   CONCLUSION

The Trustee has not carried her burden of demonstrating the existence of an agreement. The alleged settlement agreement lacks material terms and is not supported by mutual assent or consideration. Further, the conditions precedent to performance have not been met. The Trustee's untimely motion should be denied.

Respectfully submitted this the 28th day of July, 2008.

KILPATRICK STOCKTON, LLP

/s/

Stephen E. Baskin
(D.C. Bar # 45615)
607 14th Street, NW
Suite 900
Washington, DC 20005
Ph: (202) 508-5800
Fax: (202) 508-5858
sbaskin@kilpatrickstockton.com

Rachael Lee Zichella

>(Admitted *Pro Hac Vice*)
>1100 Peachtree Street
>Suite 2800
>Atlanta, Georgia 30309
>Ph: (404) 815-6500
>Fax: (404) 815-6555
>rzichella@kilpatrickstockton.com
>
>*Attorneys for Defendant*
>*Howard University Hospital*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2008, I electronically filed the foregoing **DEFENDANT'S RESPONSE TO TRUSTEE'S MOTION TO ENFORCE SETTLEMENT AGREEMENT** with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to the following attorney of record:

>James C. Strouse
>5401 Twin Knolls Road
>Suite 11
>Columbia, Maryland 21045
>sstrousejc@aol.com

I further certify that on July 28, 2008, I served a copy of the foregoing **DEFENDANT'S RESPONSE TO TRUSTEE'S MOTION TO ENFORCE SETTLEMENT AGREEMENT** by depositing a copy of same in U.S. Mail to be delivered at the following address to:

>Janet Nesse, Esq.
>Stinson Morrison Hecker LLP
>1150 18th Street N.W.
>Washington, D.C. 20036

>/s/ Rachael Lee Zichella
>Counsel for Defendant

- 9 -